1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA HOLLIS MILLIMAN, | Civil No. 3:11-cv-00558-MMA (NLS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION FOR ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT** |
| MICHAEL J. ASTRUE, Acting Commissioner of Social Security, | |
| Defendant. | |
| | [Doc. Nos. 15 & 16] |

Sylvia Hollis Milliman ("Plaintiff") brings this action under the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's ("Defendant" or "Commissioner") final decision denying her claim for social security disability insurance benefits (DIB), and supplemental security income benefits (SSI). This case was referred for a report and recommendation on the parties' cross motions for summary judgment. See 28 U.S.C. § 636(b)(1)(B). After considering the moving papers, the administrative record, and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment and for reversal and/or remand [Doc. No. 15] be **DENIED** and that Defendant's cross motion for summary judgment [Doc. No. 16] be **GRANTED**.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI benefits on May 31, 2007, claiming physical and mental disability. (Administrative Record (AR) at 181-190.) Plaintiff alleged her disability began on

1  September 12, 1996.  (AR at 181, 188.)  The Commissioner denied Plaintiff's applications for benefits

2  both initially and on reconsideration.  (AR at 80-83, 86-90.)  An Administrative Law Judge (ALJ) held a

3  hearing on February 5, 2010.  (AR at 42-75.)  Plaintiff, medical expert Alfred G. Jonas, and vocational

4  expert Robin Scher all testified at the hearing.  (*Id.*)  Based on the testimony and documentary evidence

5  the ALJ issued a decision denying Plaintiff's application for benefits.  (AR at 23-26.)  Plaintiff filed an

6  administrative appeal.  The Appeals Council denied review, making the ALJ's decision the final

7  decision of the Commissioner.  (AR at 12-14.)  Plaintiff filed this action under 42 U.S.C. § 405(g).

8  **II. RELEVANT FACTS**

9  **Background**

10  Plaintiff was born on November 11, 1961. (AR at 181.)  She received a bachelor's degree in

11  theater.  (AR at 45, 54.)  She last worked as a quality analyst for an aerospace company.  (AR at 46.)

12  Plaintiff testified she became disabled and stopped working towards the end of 1992.  (AR at 45-46.)

13  She stopped working after suffering a "complete breakdown" from an eating disorder brought on by

14  depression.  (AR at 46, 56.)

15  Since 1992, Plaintiff has accumulated an extensive medical record, including treatment records

16  from Vista Community Center (August 1998-February 2003); North Park Family Health Clinic (August

17  2005-July 2007); Downtown Family Health Center (July 2007-June 2009); Beach Family Clinic

18  (present); Tri-City Medical Center; and Scripps Mercy Hospital.  (AR 297-346, 796-850, 858-902, 853-

19  857, 358-463, 512-517.)

20  Plaintiff's medical record between 2001 and 2007 is dominated by notations involving alcohol

21  abuse problems, which subsequently led to alcohol-related seizures.  (*See* AR at 358-463, 467, 508-509,

22  537-538.)  One notation indicates she drank six glasses of wine or more each day.  (AR at 366.)  Outside

23  of her struggles with alcohol, Plaintiff's medical records during this time period describe her health as

24  relatively normal.  A physical examination performed in June 2005 states Plaintiff had "a good fund of

25  knowledge, speech and memory;" describes her as being alert, calm, and not nervous; and notes she

26  could sit and stand without difficulty.  (AR at 365.)  A tomography procedure performed in February

27  2005 showed no major problems with Plaintiff's liver, gallbladder, pancreas, spleen, bladder, and

28  appendix.  (AR at 447.)

2

1    In March 2007, Plaintiff began receiving treatment for low back and left shoulder pain.  (AR at

2    809.)  An MRI revealed "[m]oderate degenerative disc disease L5-S1."  (*Id.*)  In June 2007, a further

3    assessment concluded Plaintiff had left shoulder osteoarthritis, chronic low back pain, and lumbar

4    degenerative disc disease.  (AR at 799.)  The attending physician discussed a weight loss approach to

5    combat these health issues.  (*Id.*)  Between June 2007 and August 2010, Plaintiff received medical

6    attention for back pain, left shoulder pain, and neck and arm pain on at least ten occasions.  (*See* AR at

7    794-902.)

8    **Medical Evidence**

9    **A.    Denise Parnell, M.D., Treating Doctor (2006-2010)**

10    Denise Parnell, M.D., treated Plaintiff on various occasions between 2006 and 2010.  On January

11    7, 2010, Dr. Parnell completed a Physical Residual Functional Capacity (RFC) form to evaluate Plaintiff

12    in various work-related categories.  (AR at 913.)  Dr. Parnell diagnosed Plaintiff with c-spine and

13    shoulder pain, lower back pain, and degenerative disc disease.  (*Id.*)  Dr. Parnell indicated Plaintiff's

14    pain was located on the left side of her lumbosacral spine, cervical spine, thoracic spine, shoulder, arms,

15    hands, fingers, and knees/ankle/feet. (*Id.*)  Dr. Parnell described Plaintiff's pain as constant, shooting to

16    dull.  (AR at 914.)  She indicated that Plaintiff's pain is severe enough to constantly interfere with

17    attention and concentration needed to perform even simple work tasks.  (*Id.*)  She further opined that

18    Plaintiff was incapable of even "low stress" jobs due to her inability to tolerate work stress.  (*Id.*)  Dr.

19    Parnell stated that Plaintiff could sit for 45 minutes at a time for a total of less than 2 hours in an 8-day

20    workday, and stand for less than 45 minutes at a time for a total of less than 2 hours in an 8-hour

21    workday.  (AR at 915.)  Dr. Parnell also stated that Plaintiff must walk every 45 minutes for 10 minutes

22    each time, and that she would need to be able to sit, stand, and walk at will, and to be able to lie down

23    during unscheduled breaks during the day.  (*Id.*)  Dr. Parnell opined that Plaintiff could lift less than 10

24    pounds; occasionally twist; never stoop, crouch or climb ladders; rarely look down; occasionally look

25    up; and rarely hold her head in a static position.  (AR at 916.)  Dr. Parnell further opined that Plaintiff

26    had significant limitations with reaching, handling, fingering, and would be forced to miss more than

27    four days of work a month.  (*Id.*)

28    / / /

**B.      Fiza Singh, M.D., Treating Psychiatrist (2007)**

Fiza Singh, M.D., was Plaintiff's treating psychiatrist in 2007 through the UCSD Outpatient Psychiatric Clinic.  Dr. Singh wrote a letter dated June 26, 2007, indicating Plaintiff suffered from major depressive disorder and panic disorder without agoraphobia.  Dr. Singh, however, said that Plaintiff had recently been stable, and that her symptoms were well controlled.  (AR at 659.)

**C.      C. Valette, Ph.D. Examining Psychologist (2007)**

C. Valette, Ph.D. performed a psychological examination of Plaintiff in August 2007.  The report described Plaintiff's posture, gait, and mannerisms as "within normal range."  (AR at 581.)  Dr. Valette said that Plaintiff's thought processes were organized, and that her speech was normal.  (*Id.*)  During the examination, Plaintiff demonstrated a strong memory and ability to focus on tasks.  Dr. Valette determined that Plaintiff was able to take care of personal hygiene, perform chores, utilize public transportation independently, and handle her own finances.  (*Id.*)  Overall, Dr. Valette determined that Plaintiff had no limitations in her ability to: socially interact with others; understand instructions; sustain an ordinary routine without sustained supervision; complete simple tasks; complete detailed tasks; avoid normal hazards; and handle funds.  (*Id.*)  Dr. Valette found Plaintiff was slightly limited in her ability to complete complex tasks and concentrate for at least two-hour increments at a time.  (*Id.*)

**D.      Thomas J. Sabourin, Examining Doctor (2008)**

Thomas Sabourin, M.D., examined Plaintiff on April 8, 2008.  (AR at 644-648.)  He described Plaintiff as alert, oriented, in no acute distress, and able to sit and stand with normal posture.  (AR at 646.)  He also said Plaintiff had a normal gait and toe-heel walking, rose from a sitting position without difficulty, and required no assistive devices.  (*Id.*)  Plaintiff complained of pain in her cervical and lumbar spine at the extremes of motion, but Dr. Sabourin noted no deformity, tenderness, or spasms in those areas.  (*Id.*)  Plaintiff had normal and painless range of motion in her shoulders, wrists, elbows, hands, fingers, hips, knees, ankles, and feet.  Plaintiff experienced tenderness in her left shoulder.  (AR at 646-647.)  Ultimately, Dr. Sabourin concluded Plaintiff: (1) had the RFC to stand for up to 6 hours and sit for up to six hours in an 8-hour workday; (2) could lift, carry, push, or pull up to 20 pounds occasionally and 10 pounds frequently; and (3) was limited to occasional postural activities.  (AR at 648.)

11cv1141 W (NLS)

1  **F.      Thu N. Do, M.D., S. Bordsky, D.O., Non-examining Consultants**

2         Thu N. Do, M.D., completed an RFC assessment form in October 2007.  (AR 612-616.)  He

3  concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, sit for 6 hours and

4  stand for 6 hours in an 8-hour workday, and was limited to occasional postural activities, but could

5  never climb ladders, ropes, or scaffolds.  (*Id*.)  Dr. Bordsky reviewed and affirmed Dr. Do's decision in

6  May 2008. (AR at 641).

7  **G.      Barbara A. Smith, M.D., Herb N. Hurwitz, M.D., Non-examining Consultants**

8         Barbara A. Smith, M.D., completed a RFC assessment form and psychiatric review technique in

9  October 2007.  (AR 582-584, 585-595.)  Dr. Smith found Plaintiff was not significantly limited in most

10  relevant work-related categories.  (AR at 582-584.)  She concluded Plaintiff is able to: (1) understand,

11  remember and carry out unskilled entry level tasks; (2) perform unskilled entry level tasks for a normal

12  work week; (3) interact appropriately with supervisors and coworkers, but not with the general public;

13  and (4) adapt to changes in the workplace.  (AR at 584.)  Dr. Hurwitz reviewed and affirmed Dr.

14  Smith's opinion in March 2008.  (AR at 641.)

15                            **III. ALJ HEARING AND DECISION**

16  **Plaintiff's Testimony**

17         At the hearing, Plaintiff testified that she could not work because she is "complete[ly]unab[le] to

18  be relied upon."  (AR at 47.)  More specifically, Plaintiff complained of being severely depressed, and

19  of suffering back and shoulder pain.  (AR at 47, 51.)  Plaintiff stated that she is unable to perform basic

20  daily activities on some days, stays in bed for two to three days at a time, and is unable to process

21  information.  (AR at 48.)  She testified that she stopped working in 1992 after having a "complete

22  breakdown" caused by an eating disorder.  (AR at 46, 56.)  She has not returned to work.  (AR at 49.)

23  Plaintiff said she had been living in a sober living facility for four years, and had previously lived with

24  her parents.  (AR at 46.)

25         Plaintiff testified to taking several college courses during her time of unemployment.

26  Specifically, she took a psychology class in 2007, and an online sociology class in 2008.  (AR at 57-58.)

27         Upon questioning by the ALJ, Plaintiff said she previously had an alcohol addition for four

28  years.  (AR at 49.)  She testified that she started drinking after her mother passed away, and after she

1  developed epilepsy.  (*Id.*)  Plaintiff said she had been sober for nearly five years, and that she had not

2  had a seizure for three years.  (AR at 46, 50.)

3      Plaintiff reported being on Penatilin [phonetic], Mirilatin [phonetic], Percocet, Klonopin,

4  Cymbalta, Advil, and Levothyroxine to counter her various ailments.  (AR at 60-61.)  She testified these

5  medications lead to various side effects, including dry mouth, dizziness when standing, fatigue, and an

6  inability to process new information.  (AR at 47.)

7      Plaintiff testified that one of her preferred activities is reading, though she only likes to read

8  books she has previously read because she has a problem taking in new information.  (AR at 58.)

9  **Medical Expert's Testimony**

10      Alfred Jonas, M.D. testified at the ALJ hearing after reviewing Plaintiff's medical records.  (AR

11  50-70.)  He testified there was no evidence in the record to support Dr. Parnell's findings.  (AR at 62.)

12  Dr. Jonas said that Plaintiff's medical issues seem to have been related to unfortunate events in her life,

13  rather than actual disability.  (AR at 64.)  He further discussed that Plaintiff's treatment records

14  indicated her seizure disorder and hospitalizations were attributed mainly to alcohol abuse problems.

15  (AR at 63-66, 70.)  He opined that Plaintiff had only mild degree of impairment in regards to

16  concentration, persistence, and pace.  (AR at 69.)  Finally, he said that he would consider Dr. Sabourin's

17  report a more accurate assessment of Plaintiff's condition than Dr. Parnell's report.  (AR at 63.)

18  **Vocational Expert's Testimony**

19      Robin Scher, a vocational expert, testified as to whether Plaintiff could perform any work

20  activity that exists, either nationally or locally.  (AR at 71-73.)  Scher stated that someone with a

21  vocational profile similar to Plaintiff–college education, no past relevant work activity, limited to

22  sedentary work, simple, repetitive tasks, no public contact, minimal interaction with co-workers and

23  supervisors–could perform approximately 242,000 jobs nationwide at 40 hours a week.  (AR at 71-72.)

24  However, Scher said that assuming limitations as testified to by Plaintiff, she would not be able to work

25  40 hours a week.  (AR at 72.)

26  **The Written Decision**

27      The ALJ issued a written opinion denying Plaintiff's claim for benefits.  (AR at 23-36.)  He first

28  concluded that Plaintiff met the insured status requirements of the SSA through March 30, 1998, and

1    had not engaged in substantial gainful activity since September 12, 1996. (AR at 25.) He found no

2    medical signs or laboratory findings to substantiate the existence of a medically determinable

3    impairment prior to the expiration of her insured status on March 30, 1998. (*Id.*) Plaintiff had the

4    following severe impairments: personality disorder with cluster B traits, lumbar disc disease post

5    discectomy and laminectomy with low back pain, and cervical degenerative disc disease. (AR at 26.)

6    The ALJ found Plaintiff did not have an impairment or combination of impairments that met or

7    medically equaled one of the listed impairments in the Code of Federal Regulations. (AR at 27.)

8         The ALJ found Plaintiff has the RFC to perform light work, except she is limited to nonpublic,

9    simple, repetitive tasks that require only minimal contact with supervisors and coworkers. (AR at 29.)

10   The ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, there are jobs

11   that exist in significant numbers in the national economy that Plaintiff could perform. (AR at 35.) Thus,

12   the ALJ found that Plaintiff has not been under a "disability" as defined in the SSA from September 12,

13   1996, through the date of the decision. (*Id.*)

## IV. LEGAL STANDARDS

### Evaluating Social Security Disability Claims

16        To qualify for disability benefits under the SSA, an applicant must show that he or she is unable

17   to engage in any substantial gainful activity because of a medically determinable physical or mental

18   impairment that has lasted or can be expected to last at least 12 months. 42 U.S.C. § 423(d). The Social

19   Security regulations establish a five-step sequential evaluation for determining whether an applicant is

20   disabled under this standard. 20 C.F.R. § 404.1520(a); *Batson v. Comm'r of the Social Security Admin.*,

21   359 F.3d 1190, 1194 (9th Cir. 2004).

22        First, the ALJ must determine whether the applicant is engaged in substantial gainful activity.

23   20 C.F.R. § 404.1520(a)(4)(I). If not, then the ALJ must determine whether the applicant is suffering

24   from a "severe" impairment within the meaning of the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If

25   the impairment is severe, the ALJ must then determine whether it meets or equals one of the "Listing of

26   Impairments" in the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the applicant's

27   impairment meets or equals a Listing, he or she must be found disabled. (*Id.*) If the impairment does

28   not meet or equal a Listing, the ALJ must then determine whether the applicant retains the residual

1   functional capacity to perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the

2   applicant cannot perform past relevant work, the ALJ–at step five–must consider whether the applicant

3   can perform any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).

4         While the applicant carries the burden of proving eligibility at steps one through four, the burden

5   at step five rests on the agency.  *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).  Applicants not

6   disqualified at step five are eligible for disability benefits.  (*Id.*)

7   **Substantial Evidence**

8         The SSA provides for judicial review of a final agency decision denying a claim for disability

9   benefits.  42 U.S.C. § 405(g).  A reviewing court must affirm the denial of benefits if the agency's

10  decision is supported by substantial evidence and applies the correct legal standards.  *Id.*, *Batson*, 359

11  F.3d at 1193.  Substantial evidence means "such relevant evidence as a reasonable mind might accept as

12  adequate to support a conclusion."  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  When the

13  evidence is susceptible to more than one reasonable interpretation, the agency's decision must be

14  upheld.  *Batson*, 259 F.3d at 1193.  It is not this Court's job to reinterpret or re-evaluate the evidence

15  however much a re-evaluation may reasonably result in a favorable outcome for Plaintiff.  (*Id.*)

16                              **V. DISCUSSION**

17        Plaintiff argues that the ALJ failed to state specific and legitimate reasons for rejecting the

18  opinion of Plaintiff's treating doctor, Dr. Parnell, who found Plaintiff was incapable of performing even

19  low-stress jobs.  (Plaintiff's Motion for Summary Judgment at 4-13.)

20        Plaintiff correctly states that if an ALJ rejects a treating physician's opinion, she must state

21  specific, legitimate reasons for doing so.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

22  However, the treating physician's opinion is not binding on the ALJ if it is conclusory, brief, or

23  unsupported by the record as a whole.  *Batson*, 259 F.3d at 1195.  Here, the ALJ stated specific and

24  legitimate reasons for rejecting Dr. Parnell's opinion, and noted that Dr. Parnell's opinion "conflict[s]

25  with the substantial evidence of record . . . ."  (AR at 32.)

26        First, the ALJ noted that Dr. Parnell's opinion conflicted with numerous other well-supported

27  opinions in the record.  As the ALJ observed, Dr. Parnell did not "adequately consider the entire record,

28  including the statements of collateral sources and the objective findings of other treating physicians"

1 (AR at 32), and the "objective evidence in the record does not support the level of severity [Dr. Parnell

2 assigns]." (*Id.*)  Indeed, a majority of the record indicates Plaintiff was able to perform some level of

3 work.  Specifically, the ALJ noted the contrary opinions of Drs. Valette, Sabourin, Smith, Hurtwitz, Do,

4 and Jonas, all of whom considered Plaintiff capable of working.

5          Dr. Valette found Plaintiff had only a few minor limitations, none of which were severe enough

6 to prevent Plaintiff from maintaining a regular work schedule.  (AR at 581.)

7          Dr. Sabourin concluded Plaintiff: (1) had the RFC to stand for up to 6 hours and sit for up to six

8 hours in an 8-hour workday; (2) could lift, carry, push, or pull up to 20 pounds occasionally and 10

9 pounds frequently; (3) had no manipulative limitations; and (4) did not need an assistive device.  (AR at

10 648.)

11          Drs. Smith and Hurtwitz concluded Plaintiff was able to: (1) understand, remember and carry out

12 unskilled entry level tasks; (2) perform unskilled entry level tasks for a normal workweek; (3) interact

13 appropriately with supervisors and coworkers, but not with the general public; and (4) adapt to changes

14 in the workplace.  (AR at 584.)

15          Dr. Do concluded Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, sit for 6

16 hours and stand for 6 hours in an 8-hour workday, and was limited to occasional postural activities.  (AR

17 at 612-616.)  He found that the objective medical evidence supported a finding that Plaintiff could

18 perform a significant range of light work.  (*Id.*)

19          Dr. Jonas reviewed Plaintiff's entire medical file, and testified that the record was not clear that

20 Plaintiff had any restrictions due to her back and shoulder.  He opined that Plaintiff had no restrictions

21 in activities of daily living, moderate to marked difficulties maintaining social functioning, and mild

22 difficulties maintaining concentration.  Finally, he said there was no evidence in the record to support

23 Dr. Parnell's findings. (AR at 62, 69.)

24          Dr. Sabourin's and Dr. Valette's opinions alone constitute substantial evidence because they rest

25 on their own independent examinations of Plaintiff.  *Tonapetyan v. Halter,* 242 F.3d 1149 (9th Cir.

26 2001).  And the state consultative doctors' opinions constitute substantial evidence because they rest on

27 Plaintiff's entire treatment record.  *Id.* at 1149.

28          Second, the ALJ pointed out that Dr. Parnell's findings in the "fill-in-the-blank" assessment

1  form were substantiated by only marginal notes.  (AR at 32.)  Indeed, the form contains nothing more

2  than checkmarks and short statements from Dr. Parnell.  She did include notes describing the symptoms

3  Plaintiff was suffering from, but never specified how these symptoms rendered her disabled.

4       All of these points are specific and legitimate reasons for declining to give controlling weight to

5  Dr. Parnell's opinion when determining Plaintiff's RFC.  *See Batson*, 359 F.3d at 1195 (ALJ did not err

6  in giving minimal weight to treating physician's opinion that was conclusory and unsupported by

7  objective medical evidence); *Tonapetyan*, 242 F.3d at 1149 (ALJ properly rejected treating physician's

8  opinion that was unsupported by rationale or treatment notes).  Thus, the ALJ did not act impermissibly

9  by rejecting Dr. Parnell's opinion.

10       This Court **FINDS** that the ALJ outlined specific and legitimate reasons for rejecting the opinion

11  of Plaintiff's treating doctor.  Based on this finding, the Court declines to determine whether to award

12  benefits or remand the case.

13  **VI. CONCLUSION**

14       Based on the preceding discussion, this Court concludes that the ALJ's denial of benefits is

15  supported by substantial evidence and is free of legal error.  Therefore, the Court **RECOMMENDS** that

16  Plaintiff's motion for summary judgment [Doc. No. 14] be **DENIED** and that Defendant's cross motion

17  for summary judgment [Doc. No. 15] be **GRANTED**.

18       This Report and Recommendation is submitted to the United States district judge assigned to this

19  case pursuant to 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve

20  a copy on all parties on or before **March 26, 2012**.  The document should be captioned "Objections to

21  Report and Recommendation."  Any response to the objections shall be filed and served on or before

22  **April 2, 2012**.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

11cv1141 W (NLS)

1          Failure to file objections within the specified time may affect the scope of review on appeal.

2    *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

3          **IT IS SO ORDERED**

4    DATED: March 5, 2012

5

6                                                    Hon. Nita L. Stormes
                                                     U.S. Magistrate Judge
7                                                    United States District Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        11